**Shirley David JIMERSON and Ramona David, Appellants,**

v.

**TETLIN NATIVE CORPORATION, Appellee.**

No. S–11757.

Supreme Court of Alaska.

Sept. 29, 2006.

Rehearing Denied Dec. 22, 2006.

Fred W. Triem, Petersburg, for Appellants.

---

Davis S. Case, Cynthia M. Hora, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

MATTHEWS, Justice.

## I. INTRODUCTION

Plaintiffs seek to enforce a settlement agreement. The superior court determined that the agreement is unenforceable because the agreement's stock repurchase provision violates the Alaska Native Claims Settlement Act's (ANCSA) prohibition on the alienation of shares. Because we conclude that transfer of ANCSA stock back to a Native corporation in exchange for stock in a newly created corporation violates ANCSA, we affirm.

## II. FACTS AND PROCEEDINGS

The Tetlin Native Corporation (TNC) is a village corporation formed pursuant to ANCSA and organized as an Alaska business corporation. On July 17, 1996, TNC transferred approximately 643,174 acres of its land to the Tetlin Tribal Council.[1] This left TNC with 100,000 acres of land.

Subsequently, the appellants, Shirley Jimerson and Ramona David, conducted a campaign to recall TNC's board of directors. The campaign was successful, and on January 12, 1999, Jimerson and David were elected to the board.

On March 15, 1999, TNC and Jimerson and David, as directors and individual shareholders (collectively Jimerson),[2] filed a complaint in Alaska Superior Court in Fairbanks against certain shareholders and directors of TNC. The complaint alleged breach of fiduciary duties and wrongful transfer of TNC

land, and requested $257,200,000 in damages and declaratory and injunctive relief. On April 20, 1999, the case was removed to the United States District Court for the District of Alaska.

On August 6, 1999, the Jimerson board was recalled. The new board passed a resolution that TNC dismiss all law suits brought by the Jimerson board. On October 6, 1999, TNC moved to dismiss without prejudice all claims it had against the shareholders and former and current directors of TNC. The district court denied TNC's motion to dismiss and urged the parties to reach a settlement.

The court's advice bore fruit, and the parties reached a settlement agreement. In August 2001 the district court approved the agreement and entered judgment on it.[3] The settlement agreement acknowledged that TNC shareholders may not have been fully informed regarding dissenters' rights in the 1996 land transfer and provided for

[a] transfer of a portion of Tetlin Native Corporation's remaining lands ... to a new corporation to be formed by dissenting shareholders ... who elect to transfer their shares of Tetlin Native Corporation ANCSA stock back to the corporation in exchange for shares in the new corporation.

In May 2003 Jimerson filed a motion in district court to enforce the settlement agreement. TNC opposed the motion and moved for relief from the judgment, contending that the district court lacked subject-matter jurisdiction. The district court concluded that the case presented no substantial federal question and declared the judgment based on the settlement agreement void for lack of jurisdiction. The case was then remanded to the superior court.

On February 23, 2004, Jimerson filed a motion in the superior court to enforce the

---

1. On January 31, 1996, TNC transferred by quitclaim deed all 743,174.34 acres it owned to the Tetlin Tribal Council for ten dollars. This deed was never recorded. The July 17, 1996 deed was recorded and is the land transfer referred to in this case.

2. Flora Joe was also a named plaintiff. She is not participating in this appeal.

3. After the district court approved the settlement agreement, TNC expressed concern about the calculation of attorney's fees, and a third party moved to intervene on the basis of his interest in a land claim before the tribal council. On June 24, 2002, the court entered an amended judgment upon the settlement dealing with these issues. The amended judgment did not alter the portion of the settlement agreement relevant to our disposition of this case.

settlement agreement. TNC opposed the motion, arguing that the settlement agreement was unenforceable as against public policy for three reasons: (1) the agreement provided for an exchange of shares in violation of ANCSA's prohibition on alienation, (2) the agreement violated the Alaska Corporations Code, and (3) the attorney for plaintiffs had a conflict of interest.

On June 18, 2004, the superior court denied Jimerson's motion to enforce the settlement agreement on the grounds that the agreement was unenforceable because it violated ANCSA's prohibition on alienation.[4]

Jimerson appeals this denial.

## III. DISCUSSION

We have adopted the Restatement principle that "[a] promise or other term of an agreement is unenforceable on grounds of public policy if legislation provides that it is unenforceable. . . ."[5] This court has "no power, either in law or in equity, to enforce an agreement which directly contravenes a legislative enactment."[6]

The issue before this court is whether the transaction contemplated by the settlement agreement is prohibited by ANCSA. The settlement agreement transferred a portion of TNC's remaining land to a new corporation and then allowed "dissenting shareholders" to "transfer their shares of Tetlin Native Corporation ANCSA stock back to the corporation in exchange for shares in the new corporation."

Issues of statutory interpretation are questions of law which we review de novo.[7]

ANCSA section 7(h)(1)(B) prohibits ANCSA stock from being sold, pledged, assigned, or otherwise alienated, subject to exceptions set out in section 7(h)(1)(C).[8] ANCSA does not define the term "alienated," and this court has not had occasion to interpret the term. "[U]nless words have acquired a peculiar meaning, by virtue of statutory definition or judicial construction, they are to be construed in accordance with their common usage."[9] Black's Law Dictionary defines

---

4. The court also concluded that the attorney representing both Jimerson and TNC had a conflict of interest and that this conflict provided alternative grounds for finding the agreement unenforceable. Because we affirm on the ANCSA issue, we do not consider whether there was a conflict of interest or whether the agreement violated the Alaska Corporations Code.

5. *Pavone v. Pavone*, 860 P.2d 1228, 1231 (Alaska 1993) (adopting the RESTATEMENT (SECOND) OF CONTRACTS § 178(1) (1981)).

6. *Id.*

7. *Kodiak Island Borough v. Roe*, 63 P.3d 1009, 1012 n. 6 (Alaska 2003) (citing *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979)).

8. 43 U.S.C. § 1606(h)(1)(B), (C). These sections provide:

> (B) Except as otherwise provided in this subsection, Settlement Common Stock, inchoate rights thereto, and rights to dividends or distributions declared with respect thereto shall not be—
> (i) sold;
> (ii) pledged;
> (iii) subjected to a lien or judgment execution;
> (iv) assigned in present or future;
> (v) treated as an asset under—
> (I) Title 11 or any successor statute,

> (II) any other insolvency or moratorium law, or
> (III) other laws generally affecting creditors' rights; or
> (vi) otherwise alienated.
> (C) Notwithstanding the restrictions set forth in subparagraph (B), Settlement Common Stock may be transferred to a Native or a descendant of a Native—
> (i) pursuant to a court decree of separation, divorce, or child support;
> (ii) by a holder who is a member of a professional organization, association, or board that limits his or her ability to practice his or her profession because he or she holds Settlement Common Stock; or
> (iii) as an inter vivos gift from a holder to his or her child, grandchild, great-grandchild, niece, nephew, or (if the holder has reached the age of majority as defined by the laws of the State of Alaska) brother or sister, notwithstanding an adoption, relinquishment, or termination of parental rights that may have altered or severed the legal relationship between the gift donor and recipient.

9. *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.*, 746 P.2d 896, 905 (Alaska 1987); *accord Williams v. Taylor*, 529 U.S. 420, 431, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000) ("We give the words of a statute their 'ordinary, contemporary, common meaning,' absent an indication Congress intended them to bear some different import.") (citations omitted).

"alienate": "To transfer or convey (property or a property right) to another." [10] Webster's defines "alienate": "to convey or transfer (as property or a right) [usually] by a specific act rather than the due course of law." [11] The settlement agreement contemplates that dissenting shareholders "transfer" their ANCSA shares to TNC. Dissenting shareholders do not retain any right or interest in their ANCSA shares. The language of the statute suggests that the term "alienate" includes transfer of ANCSA stock back to a village corporation in exchange for stock in a newly created corporation.

Jimerson argues that the specific prohibitions listed in subsection 7(h)(1)(B)(i)-(v) do not apply to organic changes such as the share exchange contemplated in the settlement agreement. Jimerson argues that under the principle of ejusdem generis the general term "otherwise alienate" refers only to the same kinds of transactions specifically listed in subsection 7(h)(1)(B)(i)-(v) and therefore does not refer to a share exchange made during an organic change.

We do not find Jimerson's argument persuasive for two reasons. First, Jimerson points to no authority for the proposition that subsection 7(h)(1)(B)(i)-(v) does not apply to organic changes. As we discussed above, the language of the statute suggests that an individual shareholder alienates her stock by transferring it back to a village corporation in exchange for stock in another corporation.[12] We see no reason why the same principle would not apply to situations where many or all shareholders act at once. Whether shares are alienated by a single shareholder or by many shareholders pursuant to a formal plan for organic change, there is no indication that Congress intended to eliminate statutory protections by allowing ANCSA shareholders to exchange their shares for those of another corporation. Second, ANCSA provides specific exceptions to the section 7(h)(1)(B) restrictions. When Congress enumerates exceptions to a rule, we can infer that no other exceptions apply. Section 7(h)(1)(C) lists three exceptions that allow stock to be transferred to a Native or a descendent of a Native: (1) pursuant to a court decree of separation, divorce, or child support, (2) if the stock limits the holder's ability to practice his or her profession, or (3) as an inter vivos gift to certain relatives.[13] Section 7(h)(2) permits shares to escheat to the corporation if the holder has no heirs, and permits a corporation to repurchase shares transferred by the laws of intestate succession to a person who is not a Native or descendant of a Native.[14] The transaction contemplated by the settlement agreement

---

**10.** BLACK'S LAW DICTIONARY 80 (8th ed.2004).

**11.** MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 28 (10th ed.1998).

**12.** *See supra* p. 473.

**13.** 43 U.S.C. § 1606(h)(1)(C).

**14.** 43 U.S.C. § 1606(h)(2) provides as follows:

(A) Upon the death of a holder of Settlement Common Stock, ownership of such stock (unless canceled in accordance with subsection (g)(1)(B)(iii) of this section) shall be transferred in accordance with the lawful will of such holder or pursuant to applicable laws of intestate succession. If the holder fails to dispose of his or her stock by will and has no heirs under applicable laws of intestate succession, the stock shall escheat to the issuing Regional Corporation and be canceled.

(B) The issuing Regional Corporation shall have the right to purchase at fair value Settlement Common Stock transferred pursuant to applicable laws of intestate succession to a person not a Native or a descendant of a Native after February 3, 1988, if—

(i) the corporation—

(I) amends its articles of incorporation to authorize such purchases, and

(II) gives the person receiving such stock written notice of its intent to purchase within ninety days after the date that the corporation either determines the decedent's heirs in accordance with the laws of the State or receives notice that such heirs have been determined, whichever later occurs; and

(ii) the person receiving such stock fails to transfer the stock pursuant to paragraph (1)(C)(iii) within sixty days after receiving such written notice.

(C) Settlement Common Stock of a Regional Corporation—

(i) transferred by will or pursuant to applicable laws of intestate succession after February 3, 1988, or

(ii) transferred by any means prior to February 3, 1988, to a person not a Native or a descendant of a Native shall not carry voting rights. If at a later date such stock is lawfully transferred to a Native or a descendant of a

does not fall within any of these exceptions. We therefore infer that no exception applies for transfer of ANCSA stock back to a Native corporation in exchange for stock in a newly created corporation.

Jimerson argues that the legislative history of the 1987 ANCSA amendments shows that section 7(h)(1)(B) does not prevent holders from transferring shares back to a Native corporation. While Jimerson argues that allowing holders to sell their shares back to a Native corporation is not necessarily inconsistent with the legislative history, she has not shown a contrary legislative purpose to a plain language interpretation of the statute.[15] The legislative history available is sparse and equivocal.[16] In fact, portions of the legislative history suggest that a Native corporation does not have the power to repurchase its own shares.[17]

The language of section 7(h)(1)(B) indicates that the transaction contemplated by the settlement agreement violates ANCSA. That the transaction does not fall within ANCSA enumerated exceptions confirms this interpretation. Jimerson has failed to demonstrate through the use of legislative history a contrary legislative purpose. We therefore hold that the settlement agreement is unenforceable because it directly contravenes the section 7(h)(1)(B) restrictions on ANCSA stock.

## IV. CONCLUSION

We AFFIRM the superior court's denial of Jimerson's motion for enforcement of the settlement agreement.

Native, voting rights shall be automatically restored.

15. *Cf. Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 788 (Alaska 1996) (applying plain meaning absent convincing evidence of a contrary legislative purpose).

16. Our focus on textual analysis in construing acts of Congress is supported by the United States Supreme Court's recent expressions of doubt as to the utility of legislative history in statutory interpretation. *See City of Rancho Palos Verdes, Cal. v. Abrams,* 544 U.S. 113, 122, 125 S.Ct. 1453, 161 L.Ed.2d 316 (2005) (looking only

to the text and its "express or implicit" indications for guidance).

17. In discussing this specific grant of the right to repurchase stock, the Senate Report explains that the "power [to repurchase stock] only exists if the corporation is the issuing corporation and has suitably amended its articles of incorporation." S.REP. No. 100–201, at 28 (1987), *as reprinted in* 1987 U.S.C.C.A.N. 3269, 3278. This suggests a legislative intent to grant a Native corporation the power to repurchase shares only in special circumstances and where procedural requirements have been met.