Frank **GRISWOLD**, Appellant,

v.

**CITY OF HOMER, City Clerk Jo Johnson, and Kachemak Shellfish Mariculture Association, Appellees.**

No. S–13734.

Supreme Court of Alaska.

June 10, 2011.

---

10. Op. at 1014.

Frank Griswold, Homer, Appellant, pro se.

Thomas F. Klinkner, Birch Horton Bittner & Cherot, Anchorage, for Appellees City of Homer and City Clerk Jo Johnson.[1]

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I. INTRODUCTION

Frank Griswold, a resident of Homer, filed a notice of appeal of the Homer Advisory Planning Commission's grant of a conditional-use permit to a mariculture association. The city clerk rejected his appeal for lack of standing because Griswold did not show that the permitted action would have an adverse effect on the use, enjoyment, or value of his property, and because Griswold's interests were not distinct from those of the general public. Griswold appealed that rejection to the superior court, which affirmed. We affirm the superior court's decision because the provisions of the Homer City Code restricting standing in land use appeals are lawful and because the city clerk correctly rejected Griswold's appeal. We also clarify that when the superior court acts as an intermediate appellate court, its opinion is the judgment that begins the 30–day period for appeals under Alaska Appellate Rule 204(a)(1).

## II. FACTS AND PROCEEDINGS

Frank Griswold is a resident of Homer, owns real property there, and is a frequent litigant in matters of land use and zoning.[2]

On February 20, 2008, the Homer Advisory Planning Commission (Commission) considered an application for a conditional-use permit (Permit) by the Kachemak Shellfish Mariculture Association (KSMA). KSMA applied for the Permit so that it could construct an "8,373 square foot two-story structure using the existing platform at 3851 Ho-

---

1. Kachemak Shellfish Mariculture Association did not participate in the appeal.

2. *See Griswold v. City of Homer,* 186 P.3d 558 (Alaska 2008); *Griswold v. City of Homer,* 55 P.3d 64 (Alaska 2002); *Griswold v. City of Homer,* 34 P.3d 1280 (Alaska 2001); *Griswold v. City of Homer,* 925 P.2d 1015 (Alaska 1996).

mer Spit Road." Griswold attended the Commission's meeting and made public comments in opposition to the application. The Commission approved Permit 07–14 for KSMA's desired use, issuing its decision on April 22, 2008.

On April 28, 2008, Griswold filed a notice of appeal of the Commission's approval of Permit 07–14. In it he stated:

> Frank Griswold is a resident of the City of Homer and owns property within the city. He routinely walks on the publicly owned beach adjacent to the subject property where he watches shorebirds and marine life, collects agates, and trains his Labrador Retrievers. Griswold believes the excessive uses and excessive structure approved via [Permit] 07–14 will create congestion and visual blight which will adversely affect his future enjoyment of that beach and his ability to safely access it once rights-of-way and other public property in the vicinity are taken over for customer parking by KSMA. Griswold also occasionally attends performances at Pier One Theater which is located directly across the Homer Spit Road from KSMA's property. Griswold believes the uses facilitated by [Permit] 07–14 could jeopardize future theater operations by taking over its parking spaces and/or lead to the cancelling of its city lease altogether. Furthermore, Griswold drives past KSMA's Spit property virtually on a daily basis and is concerned for the safety of pedestrians including the clients of KSMA who will be forced to cross a highway to access their vehicles due to the insufficiency of on-site customer parking spaces.

On May 2, 2008, Griswold received a letter from the city clerk, Jo Johnson. Johnson stated that she found Griswold's appeal to be "timely and contain[ing] proper information." But she rejected the appeal for lack of a showing of standing because Griswold did not "mention or [prove] that [he] own[ed] real property in the vicinity of 3851 Homer Spit Road." Johnson also found that Griswold's "interest in the subject property [was] no different from that of the general public" and that Griswold was therefore not a "person aggrieved" under Homer City Code 21.68.020(c).[3]

The same day he received the letter, Griswold sent a letter to Johnson—which Johnson characterized as a "corrected notice of appeal"—arguing that his interest was distinct from the general public's and that it was unclear whether Johnson had the authority to "unilaterally decide [he] d[id] not have standing." On May 5, 2008, Johnson sent a second letter to Griswold, rejecting his "corrected notice of appeal," informing him that he had still failed to provide evidence of the adverse effect the approval of Permit 07–14 might have on the use, enjoyment, or value of his real property, and stating that as a result he still had not demonstrated that he had standing to appeal. The letter informed Griswold that Johnson's determination was now "final" and that he had 30 days to appeal it to the superior court. On May 9, 2008, Griswold submitted a map showing the real property owned by Griswold in Homer, labeled "Supplement to Notice of Appeal [Permit] 07–14 (KSMA)."[4] On May 14, 2008, Johnson sent Griswold a third and final letter informing him that the May 5 rejection of his corrected notice of appeal was a "final action" and that his Supplement was therefore rejected as well.

On June 2, 2008, Griswold filed a notice of appeal in the superior court. On May 14, 2009, the superior court issued its "Decision on Appeal." It rejected all of Griswold's arguments, concluding that "standing to appeal land use decisions has been lawfully restricted by the Homer City Council" and affirming Johnson's rejection of Griswold's notice of appeal. Griswold filed a motion for reconsideration on May 26, 2009, which the

---

**3.** The standing provisions of the Homer City Code (HCC) that Johnson applied to Griswold's appeal were current at the time, but have since been superceded. *See* HCC 21.93.060 and .080; City of Homer, Alaska, Ordinance 08–29 (2008). For simplicity, we nevertheless refer to the applicable standing provisions in the present tense.

**4.** We observe that the map purports to show that Griswold owns real property in the town center of Homer, over four miles away from the affected area on the Homer Spit. By his own admission Griswold's lots are in "a different zoning district" than the Homer Spit.

superior court denied on June 1. The court issued a "Final Judgment" dismissing the case on December 16, 2009, in which it also awarded the City and KSMA attorney's fees and costs. On December 23, 2009, Griswold filed this appeal.

## III. DISCUSSION

### A. Standard Of Review

■ Where the superior court acts as an intermediate appellate court, we give "no deference to its decision, but, instead ... independently scrutinize[ ] directly the merits of the administrative determination."[5] In doing so, we apply four distinct standards of review to administrative decisions: "(1) the substantial evidence test for questions of fact; (2) the reasonable basis test for questions of law involving agency expertise; (3) the substitution of judgment test for questions of law where no expertise is involved; and (4) the reasonable and not arbitrary test for review of administrative regulations."[6]

■ This case presents only legal questions, none of which involve agency expertise. Whether an appeal is timely is a question of law.[7] Whether the provisions of the Homer City Code restricting standing in land use actions comply with the applicable state statutes is a question of statutory interpretation and therefore a question of law as well,[8] and we review such issues de novo.[9] Additionally, "a due process claim ... raises a question of law that does not involve agency expertise."[10] The same is true for an equal protection claim.[11] Finally, whether a municipal delegation of authority to a city official is lawful is also a question of law.[12] We therefore "apply our independent judgment" to all questions in this case, "adopting the rule of law that is most persuasive in light of precedent, reason, and policy."[13]

### B. Griswold's Appeal, Though Untimely, Is Not Rejected.

The City argues that Griswold's present appeal is untimely because he failed to file an appeal within 30 days of judgment as required by Appellate Rule 204(a)(1), which provides in relevant part: "The notice of appeal shall be filed within 30 days from the date shown in the clerk's certificate of distribution on the judgment appealed from." Specifically, the City argues that under Appellate Rule 204(a)(1), where the superior court acts as an intermediate appellate court reviewing an agency determination, "judgment" refers to the superior court's disposi-

---

**5.** *Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough,* 865 P.2d 741, 742 n. 5 (Alaska 1993) (quoting *Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co.,* 746 P.2d 896, 903 (Alaska 1987)) (internal quotation marks omitted).

**6.** *May v. State, Com. Fisheries Entry Comm'n,* 168 P.3d 873, 879 (Alaska 2007) (quoting *Brandal v. State, Com. Fisheries Entry Comm'n,* 128 P.3d 732, 735 (Alaska 2006)). The substitution of judgment standard is the same as de novo review. *See, e.g., Simpson v. State, Com. Fisheries Entry Comm'n,* 101 P.3d 605, 609 (Alaska 2004) ("We review questions of law ... de novo under the substitution of judgment standard.").

**7.** *See Platz v. Aramburo,* 17 P.3d 65, 68 (Alaska 2001).

**8.** *See Jimerson v. Tetlin Native Corp.,* 144 P.3d 470, 472 (Alaska 2006) ("Issues of statutory interpretation are questions of law which we review de novo.") (citing *Kodiak Island Borough v. Roe,* 63 P.3d 1009, 1012 n. 6 (Alaska 2003)).

**9.** *Earth Movers,* 865 P.2d at 742 n. 5 ("In order to determine if Earth Movers has standing, we must interpret the applicable statutes and ordinance. Thus we address questions of law, and

the appropriate standard of review is de novo.") (citing *Langdon v. Champion,* 745 P.2d 1371, 1372 n. 2 (Alaska 1987)).

**10.** *May,* 168 P.3d at 879 (quoting *AU Int'l, Inc. v. State, Dep't. of Nat'l Res.,* 971 P.2d 1034, 1040 (Alaska 1999)).

**11.** *See Pub. Employees' Ret. Sys. v. Gallant,* 153 P.3d 346, 349 (Alaska 2007) ("The equal protection challenge presents a question of law to which this court applies its independent judgment.") (citing *Alaska Civil Liberties Union v. State,* 122 P.3d 781, 785 (Alaska 2005)).

**12.** *Cf. City of Anchorage v. Richardson Vista Corp.,* 242 F.2d 276, 285 (9th Cir.1957) ("[C]ourts cannot set aside city ordinances [delegating authority to city officials] unless they are unconstitutional or ultra vires, or in some special connection or effect, unreasonable.").

**13.** *Jacob v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.,* 177 P.3d 1181, 1184 (Alaska 2008) (quoting *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979)) (quotation marks and citations omitted).

tive decision or opinion on the merits. The City reasons that the superior court's May 14 Decision on Appeal is consequently the relevant "judgment" for the purposes of Appellate Rule 204(a)(1).[14]

Griswold argues that his appeal is timely and, alternatively, that this court should excuse his untimeliness given the ambiguity in the rules and his pro se status.

### 1. Griswold's appeal is untimely.

■ The parties' disagreement centers around what is meant by "judgment" in Appellate Rule 204(a)(1). The City argues that the superior court's May 14, 2009 "Decision on Appeal" is the relevant "judgment" for the purposes of the rule, and that Griswold's December 23, 2009 notice of appeal therefore fell outside the rule's 30–day window.[15] Griswold argues that the superior court's December 16, 2009 "Final Judgment" is the relevant judgment, and that his notice of appeal is therefore timely under the rule.

The City's argument is correct. It touches on an important distinction between cases where the superior court acts as a trial-level court and cases where the superior court acts as an intermediate appellate court.

■ Where the superior court acts as a trial-level court, an opinion or decision is not a "judgment" for the purposes of Appellate Rule 204(a)(1): "The judgment referred to in

Appellate Rule 204(a)(1) is the judgment that, per Civil Rule 58, must be set forth on a separate document and that is to be entered after the court makes its decision." [16] For example, we held that an appeal was timely where the superior court entered final judgment more than one year after it granted summary judgment on all claims, and the appellant filed her appeal within 30 days of the entry of that final judgment.[17] Specifically, the final judgment entered under Civil Rule 58—not the order granting summary judgment—was the "judgment" to which Appellate Rule 204(a)(1) referred.[18]

When the superior court acts as an intermediate appellate court, however, it must follow different procedural rules. These rules are contained in Part Six of the Alaska Rules of Appellate Procedure. Under Part Six's Appellate Rule 601(c), "procedure in appeals to the superior court shall be governed by the provisions of Parts Two and Five," which are the rules for the other Alaska appellate courts, such as the Court of Appeals and this court. Under Appellate Rule 507(a), which is contained in Part Five, "[t]he opinion of the appellate court ... shall constitute its judgment."

Therefore, where the superior court acts as an intermediate appellate court, there is no requirement that it enter final judgment on a separate document. Civil Rule 58 does not apply in such cases.[19] The "separate

---

14. The City also emphasizes that Appellate Rule 204(a)(5)(A) provides that "[t]he running of the time for filing an appeal is not terminated by ... proceedings related to the award of attorney's fees." It cites *Pruitt v. State, Dep't of Pub. Safety, Div. of Motor Vehicles*, where we held that an award of attorney's fees was an abuse of discretion because "the ... motion for attorney's fees, filed seven months after final judgment [had] been entered, was not filed within a 'reasonable time.'" 825 P.2d 887, 895–96 (Alaska 1992). The City argues that "the *Pruitt* decision certainly would not have expressed concern about the timeliness of a motion for attorney's fees if the time for appeal began to run only after attorney's fees had been awarded." But Griswold does not argue that his notice of appeal was timely because it came within 30 days of the award of attorney's fees; he argues that it was timely because it came within 30 days of the entry of final judgment.

15. The City acknowledges that Griswold's May 26, 2009 motion for reconsideration would have

tolled the time for filing an appeal under Appellate Rule 204(a)(3). It argues that the time for filing an appeal began to run again on June 2, the date the superior court denied Griswold's motion for reconsideration, and that Griswold's time to appeal the superior court's order therefore expired on June 21, 2009. As we explain, the City is correct.

16. *Richard v. Boggs*, 162 P.3d 629, 633 (Alaska 2007) (citing *Schneider v. Pay'N Save Corp.*, 723 P.2d 619, 622–23 (Alaska 1986)).

17. *Schneider*, 723 P.2d at 622–23.

18. *Id.*

19. *See* Alaska R.App. P. 601(c) ("On any point not addressed in Part Six, procedure in appeals to the superior court shall be governed by the provisions of Parts Two and Five of these rules...."); Alaska R.App. P. 507(a) (providing that "[t]he opinion of the appellate court, or its order ..., shall constitute its judgment").

document rule"[20] cannot apply to cases where the superior court acts an intermediate appellate court, notwithstanding the fact that the superior court did enter final judgment on a separate document in this case.

We therefore clarify that where the superior court acts as an intermediate appellate court, under Appellate Rule 507(a) its opinion or decision on appeal is the "judgment" to which Appellate Rule 204(a)(1) refers. Thus, Griswold's appeal is not timely.

## 2. Griswold's appeal, though untimely, is not dismissed.

■ Griswold argues that this court should excuse any untimeliness given the ambiguity in the rules and his pro se status. The City argues that "Griswold's status as a pro se litigant should not relieve him from compliance with the Appellate Rules" because: (1) "the Rules plainly designate the time for filing an appeal," (2) "Griswold's deviation from the requirements ... is far from *de minimis*," and (3) "Griswold is no stranger to appellate litigation [and] ... has demonstrated the ability to present sophisticated legal analyses on issues of first impression."

■ Appellate Rule 204(a)(1)'s "time limit is not jurisdictional, and may be relaxed to avoid injustice."[21] Although Griswold has perhaps litigated more frequently than the typical pro se litigant,[22] we have noted that "[o]rdinarily, 'pro se litigants who make good faith efforts to comply with court rules should not be held to strict procedural requirements.'"[23] For example, we have excused a pro se litigant's untimeliness and permitted a late appeal where "the record

indicate[d] that [the litigant] made a good-faith effort to appeal by the deadline."[24]

■ The application of Appellate Rule 204(a)(1) in the present case might have confused even a law-trained individual. First, it is well established that where the superior court is not acting as an intermediate appellate court, only the entry of final judgment on a separate document begins the running of the time to appeal.[25] Second, we have not previously specified precisely which event cues the running of the time to appeal in cases where the superior court acts as an intermediate appellate court, and understanding which rules, both civil and appellate, properly apply in such cases demands careful study of the law. Third, the fact that the superior court actually entered final judgment in the present case suggests that its doing so might be standard practice—or at least not anomalous—in these circumstances, even if the Rules of Appellate Procedure do not require it.

Griswold apparently made a good-faith effort to comply with the deadline. We therefore excuse his untimeliness and permit the current appeal.

## C. The Homer City Code Provisions Limiting Standing In Land Use Appeals Are Lawful.

### 1. The provisions do not conflict with applicable state statutes.

■ Alaska Statutes 29.40.050 and .060 "provide for two levels of review" of certain municipal land use actions and determina-

---

**20.** *See Schneider,* 723 P.2d at 622–23.

**21.** *Richard v. Boggs,* 162 P.3d 629, 633 (Alaska 2007) (citing *In re Adoption of Erin G.,* 140 P.3d 886, 889 (Alaska 2006)); *see also Isaacson Structural Steel Co. v. Armco Steel Corp.,* 640 P.2d 812, 815 n. 8 (Alaska 1982) ("[W]e have previously rejected the argument that the requirement as to timely notice of appeal is jurisdictional on the ground that that requirement, unlike jurisdictional requirements, can be relaxed to avoid surprise or injustice." (internal quotation marks omitted)).

**22.** *See Griswold v. City of Homer,* 186 P.3d 558 (Alaska 2008) (appeared pro se); *Griswold v. City*

*of Homer,* 55 P.3d 64 (Alaska 2002) (appeared pro se); *Griswold v. City of Homer,* 34 P.3d 1280 (Alaska 2001) (represented by counsel); *Griswold v. City of Homer,* 925 P.2d 1015 (Alaska 1996) (appeared pro se).

**23.** *Prentzel v. State, Dep't of Pub. Safety,* 169 P.3d 573, 593 (Alaska 2007) (quoting *Noey v. Bledsoe,* 978 P.2d 1264, 1270 (Alaska 1999)).

**24.** *In re Adoption of Erin G.,* 140 P.3d 886, 889 (Alaska 2006).

**25.** *See, e.g., Richard,* 162 P.3d at 633; *Schneider,* 723 P.2d at 622–23.

tions.[26] The statutes provide for first level review within a borough: AS 29.40.050(a) requires "the assembly" to "provide for an appeal from an administrative decision of a municipal employee, board, or commission made in the enforcement, administration, or application of a land use regulation." That appeal may be "to a court, hearing officer, board of adjustment, or other body."[27] The statutes provide for second level review by the superior court: AS 29.40.060(a) requires "[t]he assembly" to "provide ... for an appeal by a municipal officer or person aggrieved from a decision of a hearing officer, board of adjustment, or other body to the superior court."

Griswold argues that HCC 21.68.020(c)[28] and .040(b)(6)[29] conflict with AS 29.40.050, and that HCC 21.68.020(c) provides for a "more restrictive definition of 'person aggrieved' than that adopted by" this court. Both arguments are flawed.

HCC 21.68.020(c) and .040(b)(6) satisfy AS 29.40.050 and .060. In *Earth Movers of Fairbanks, Inc. v. Fairbanks North Star Borough*, we examined municipal code provisions limiting standing in land use cases (both for internal appeals and appeals to the superior court) to "[a]ny person *adversely*

*affected* by a decision or determination."[30] We "interpret[ed] the phrase 'adversely affected' as used in the [municipal] ordinance to mean the same as the word 'aggrieved' as used in the [state] statute."[31] We held that the denial of standing to a business competitor—whose only potential injury would have resulted from increased competition—under the municipal code provisions was lawful under AS 29.40.050 and .060 because the competitor was not a "person aggrieved" within the meaning of AS 29.40.060(a).[32]

In so holding, we looked to several sources of law, including cases from other jurisdictions,[33] and noted that "[t]he legislature chose to provide review for those 'aggrieved,' indicating that it follows the general practice of review in zoning cases."[34] We then "adopt[ed] the majority interpretation of 'aggrieved.'"[35]

The definition of "aggrieved" in Homer City Code 21.68.020(c) mirrors that presented in *Earth Movers:* one who is adversely affected.[36] The Homer City Code's definition of "aggrievement" is not more restrictive than our interpretation of AS 29.40.060(a). The provisions of the Homer City Code therefore do not violate either AS 29.40.050 or .060.[37]

---

**26.** *Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough*, 865 P.2d 741, 743 (Alaska 1993).

**27.** AS 29.40.050(a).

**28.** Homer City Code 21.68.020(c) provides:
For purposes of this title, to be a "person aggrieved" the person must show proof of the adverse effect the action or determination has or could have on the use, enjoyment, or value of real property owned by that person. An interest that is no different from that of the general public is not sufficient.

**29.** Homer City Code 21.68.040(b) provides in relevant part:
A notice of appeal shall be in writing, be signed by the appellant, and shall contain, but is not limited to, the following information:
. . .
(6) Proof showing that the appellant is an aggrieved person with standing to appeal under section 21.68.020.

**30.** *Earth Movers*, 865 P.2d at 743 (emphasis in original).

**31.** *Id.*

**32.** *Id.* at 745. We did so despite the fact that AS 29.40.050(a) makes no mention of "person aggrieved," suggesting that the statute requires, at most, appeals within the borough to be available only to those who would also have standing to appeal to the superior court.

**33.** *Id.* at 744–45.

**34.** *Id.* at 743.

**35.** *Id.* at 745.

**36.** *Id.* at 743.

**37.** *See Earth Movers*, 865 P.2d at 745 (holding that provisions denying standing to appeal a land use determination were lawful under both AS 29.40.050 and .060 because prospective appellant was not a "person aggrieved" under AS 29.40.060(a)).

## 2. The provisions do not unlawfully eliminate taxpayer-citizen standing.

■ Griswold argues that the provisions of the Homer City Code limiting standing unlawfully eliminate taxpayer-citizen standing in land use cases, and that the *Earth Movers* rationale applies only to cases involving business competition, rather than all land use cases.

We have noted that "[i]n the area of land use law, the legislature has chosen to limit standing by statute." [38] In *Earth Movers,* "[g]eneral Alaska standing law [was] not applicable" because it was a municipal land use case generally, not because it was a business competition case.[39] The Alaska Legislature, not the Homer City Council, eliminated taxpayer-citizen standing in land use cases by enacting AS 29.40.050–.060.[40]

## 3. Neither HCC 21.68.020(b)(3) nor HCC 21.68.020(c) violates Griswold's due process rights.

### a. HCC 21.68.020(b)(3)

■ Griswold argues that HCC 21.68.020(b)(3)'s requirement that a person have "participated in the proceedings before the [Planning] Commission" in order to have standing to appeal an action or determination "violates due process." The participation requirement, Griswold argues, "encourages arbitrary decision-making and cronyism because if no member of the public 'actively' participates in a proceeding the Planning Commissioners know there is little likelihood

their decisions will be subjected to judicial review."

Griswold attended the February 20, 2008 meeting at which the Planning Commission approved Permit 07–14 and spoke in opposition to the Permit. Because he actively participated in the proceedings, it appears Griswold is attempting to assert the due process rights of others who did not participate in the proceedings. Regardless, the participation requirement did not preclude Griswold from having standing; HCC 21.68.020(b)(3)'s requirement that a person also be "aggrieved" by an action or determination did.

Because HCC 21.68.020(b)(3)'s participation requirement did not preclude him from having standing, Griswold is not the proper party to request an adjudication of this issue,[41] and he lacks standing to assert the due process claims.[42]

### b. HCC 21.68.020(c)

■ Griswold also argues that HCC 21.68.020(c)'s provision that "[a]n interest that is no different from that of the general public is not sufficient" to confer standing "violates ... due process and common sense." The City argues that HCC 21.68.020(c) did not deprive Griswold of a property interest sufficient to warrant constitutional protection.

■ The test for deprivations of procedural due process under both the Alaska Constitution [43] and the United States Constitution [44] is the test outlined in *Mathews v. Eldridge.*[45] Under the *Mathews* test, a liti-

---

38. *Id.* at 743.

39. *See id.*

40. Ch. 74, § 11, SLA 1985.

41. Griswold does not claim that he suffered harm from having to participate in the proceedings; the only harm of the participation requirement to which he alludes is the lost opportunity to appeal, which he did not suffer as a result of the requirement. *See Moore v. State,* 553 P.2d 8, 23 n. 25 (Alaska 1976) ("Standing questions are limited to whether the litigant is a 'proper party to request an adjudication of a particular issue ....' ") (quoting *Flast v. Cohen,* 392 U.S. 83, 100–01, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968)).

42. *See Stanek v. Kenai Peninsula Borough,* 81 P.3d 268, 273 (Alaska 2003) (holding that a non-

resident did not have standing to challenge a provision of a tax ordinance relating to residential property used as a permanent residence because he "ha[d] no personal stake in the constitutionality of the [provision]").

43. ALASKA CONST art. I, § 7 ("No person shall be deprived of life, liberty, or property, without due process of law.").

44. U.S. CONST. amend. XIV, § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law ....").

45. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (establishing the test under the United States Constitution); *Hilbers v. Municipality of Anchorage,* 611 P.2d 31,

gant claiming a due process violation must have been deprived of a cognizable liberty or property interest.[46] Griswold identifies no liberty or property interest of which HCC 21.68.020(c) deprived him. And the City is correct that any property interest great enough to be cognizable for the purposes of a due process violation would also have been sufficient to confer standing on Griswold under the Homer City Code.

### 4. Neither HCC 21.68.020(b)(3) nor HCC 21.68.020(c) violates Griswold's equal protection rights.

Griswold does not directly cite the equal protection provisions of either the Alaska Constitution[47] or the United States Constitution,[48] but he does argue that HCC 21.68.020(c) "discriminates against" both him and "renters and other affected parties who do not own real property." The City interprets this as an equal protection claim,[49] and argues that Griswold's claim does "not invoke any heightened level of equal protection scrutiny" and that Griswold does not have standing to assert the equal protection interests of renters and other affected parties.

Griswold owns real property in Homer. For the same reasons discussed in Section III(C)(3)(a) above, Griswold cannot assert the equal protection rights of renters and other parties who do not own real property.[50] He also does not satisfy the requirements for any of the exceptions to the general rule that a litigant lacks standing to assert the constitutional rights of others.[51] We therefore limit our inquiry to Griswold's claim that HCC 21.68.020(c) discriminates against him.

Under the Alaska Constitution, the "legitimate reason test" is "the standard level of scrutiny ... in equal protection cases,"[52] and we apply it to laws that do not employ classifications based on suspect factors or infringe on fundamental rights.[53] Under this test, a law "will survive as long as a 'legitimate reason for the disparate treatment exists' and the law creating the classification 'bears a fair and substantial relationship to that reason.'"[54]

In defining who is aggrieved for the purposes of standing, HCC 21.68.020(c) creates a classification based only on whether people can demonstrate that an action or determination has or could have an adverse effect "on the use, enjoyment, or value of real property owned by [them]." It therefore does not employ a classification based on a suspect[55] (or quasi-suspect[56]) factor, nor does it infringe on a fundamental right.[57]

Applying the test to the present case, the reason for HCC 21.68.020(c)'s classification of

---

36–37 (Alaska 1980) (adopting the *Mathews* test for state due process claims).

**46.** *Mathews*, 424 U.S. at 332, 96 S.Ct. 893.

**47.** ALASKA CONST. art. I, § 1 ("[A]ll persons are equal and entitled to equal rights, opportunities, and protection under the law....").

**48.** U.S. CONST. amend. XIV, § 1 ("[N]or shall any State ... deny to any person within its jurisdiction the equal protection of the laws.").

**49.** The superior court did as well.

**50.** *See Keller v. French*, 205 P.3d 299, 304 (Alaska 2009); *State ex rel. Dep'ts of Transp. & Labor v. Enserch Alaska Constr., Inc.*, 787 P.2d 624, 630 n. 9 (Alaska 1989).

**51.** *See Keller*, 205 P.3d at 304 n. 24 (noting exceptions for third-party standing such as where a parent asserts a child's constitutional rights, where a special relationship exists, or where the interested party's attempt to vindicate rights would forfeit those rights).

**52.** *Pub. Emps.' Ret. Sys. v. Gallant*, 153 P.3d 346, 349 (Alaska 2007).

**53.** *See id.* at 349–50.

**54.** *Squires v. Alaska Bd. of Architects, Eng'rs & Land Surveyors*, 205 P.3d 326, 341 (Alaska 2009) (quoting *Gallant*, 153 P.3d at 349).

**55.** *See id.* (identifying race, national origin, and alienage as examples of suspect factors); *Gallant*, 153 P.3d at 349–50 (also identifying race, national origin, and alienage as examples of suspect factors).

**56.** *See Stanek v. Kenai Peninsula Borough*, 81 P.3d 268, 270 (Alaska 2003) (quoting *Gonzales v. Safeway Stores, Inc.*, 882 P.2d 389, 396 (Alaska 1994)) (identifying gender and illegitimacy as examples of quasi-suspect factors).

**57.** *See Gallant*, 153 P.3d at 349–50 (identifying voting, litigating, and the exercise of intimate personal choices as examples of fundamental rights).

who is a "person aggrieved" is to limit standing to persons with "a substantial, direct, and immediate interest in the outcome on the matter," [58] "in order to prevent excessive litigation and undue delay of final dispositions." [59] Indeed, when the City of Homer enacted the ordinance establishing its "person aggrieved" standard for standing, it expressly justified the standard as follows:

[A] municipality is required by Alaska Statute § 29.40.060 to grant standing to a "person aggrieved" by a zoning decision made by municipal officials, and this signifies that *the legislature has chosen to limit standing in the area of land use law, primarily in order to prevent excessive litigation and undue delay of final dispositions,* ... but also because an expansive rule of standing would potentially create a land use battleground that would unduly tax the resources of the municipality as well as impair the free enterprise system, ... and unreasonably interfere with the use and development of private property.[60]

These reasons are "legitimate." And the law's requirement that an action potentially have an adverse effect on the use, enjoyment, or value of real property owned by the person seeking to appeal that action—in a manner different from that of the general public—"bears a fair and substantial relationship to that reason." [61] Indeed, the requirement is a relatively common method of achieving this goal.[62]

Thus, HCC 21.68.020(c) does not deprive Griswold of equal protection under the Alaska Constitution or the United States Constitution.[63]

### D. The City Clerk Did Not Err In Rejecting Griswold's Appeal For Lack Of Standing.

 Griswold argues that even under the disputed provisions of the Homer City Code he had standing to appeal the approval of Permit 07–14, and that Johnson therefore erred in rejecting his appeal. Griswold also argues that HCC 21.68.040(c)'s use of the term "general public" might refer to all Alaskans or even all Americans, and that his interest as a resident of Homer is therefore distinct from that of the general public.

 Under HCC 21.68.020(c), to be a "person aggrieved" a person "must show proof of the adverse effect the action or determination has or could have on the use, enjoyment, or value of *real property owned by that person*." [64] (Emphasis added.) The City correctly observes that Griswold's uses of public land, attendance at the Pier One Theater, and concerns about parking and pedestrian safety do nothing to suggest a

**58.** 83 Am.Jur.2d *Zoning and Planning* § 923 (2003).

**59.** *See Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough,* 865 P.2d 741, 743 n. 6 (Alaska 1993) (explaining the rationale for more restrictive standing requirements in zoning cases); *see also* 83 Am.Jur.2d *Zoning and Planning* § 923 (2003) ("[P]ermitting everyone to seek review [of administrative actions in land use cases] could work against the welfare of the community by proliferating litigation and by unduly delaying final dispositions.").

**60.** City of Homer, Alaska, Ordinance 05–17(s) (2005) (citing *Earth Movers,* 865 P.2d at 743 n. 6) (emphasis added).

**61.** *Squires v. Alaska Bd. of Architects, Eng'rs & Land Surveyors,* 205 P.3d 326, 341 (Alaska 2009) (quoting *Gallant,* 153 P.3d at 349).

**62.** *See* Ross D. Cohen, Note, *Why Require Standing If No One Is Seated? The Need To Clarify Third Party Standing Requirements In Zoning Challenge Litigation,* 42 Brandeis L.J. 623, 623–24, n. 5 (2004) (acknowledging the need to limit standing in land use cases and listing states that require a person to be similarly "aggrieved"); *see also* 83 Am.Jur.2d *Zoning and Planning* § 925 (2003) ("To maintain standing ... a person ... must present proof of the adverse effect the changed status has or could have on the use, enjoyment, and value of his or her property.... [H]e or she must also be personally and specially affected in a way different from that suffered by the public generally.").

**63.** *See Barber v. Municipality of Anchorage,* 776 P.2d 1035, 1039 (Alaska 1989) ("The minimum level of equal protection scrutiny in Alaska ... is more demanding than the federal rational basis test.").

**64.** In *Earth Movers* we "interpret[ed] the phrase 'adversely affected' as used in the [municipal] ordinance to mean the same as the word 'aggrieved' as used in the [state] statute." 865 P.2d at 743.

potential detrimental effect on any of *his* property. And Griswold's statement, without elaboration, that he owns several lots of land "which, even though in a different zoning district, could be adversely affected by KSMA's activities" is insufficient to demonstrate how his use, his enjoyment, or the value of his property might be adversely affected. Even if Johnson had considered Griswold's "Supplement to Notice of Appeal [Permit] 07–14 (KSMA)" showing the real property Griswold owned in Homer, she would still have been correct to conclude that Griswold was not a "person aggrieved" and to reject his appeal for lack of standing.[65]

We also reject Griswold's argument that "general public" means something other than the citizens of Homer. We find this interpretation highly implausible as a matter of statutory interpretation and seemingly a roundabout attempt to read citizen-taxpayer standing into HCC 21.68.020(c).

### E. The City Clerk Had The Authority To Reject Griswold's Appeal.

 Griswold also argues that the city clerk lacks the authority to "summarily and arbitrarily" determine standing issues. The City argues that the Homer City Code authorized Johnson to reject Griswold's appeal, and that the delegation of that authority was lawful.

Homer City Code 21.68.040(c) expressly provides that "[t]he City Clerk shall reject any notice of appeal that does not comply with sections 21.68.030–21.68.040 and notify the appellant of the reasons for rejection." City law thus authorized, indeed mandated, that the clerk reject Griswold's appeal.

The delegation of the authority to reject appeals for lack of standing was also lawful. We have stated that a city's "right ... to delegate powers to govern the affairs of the municipality will not be strictly construed, for '[w]ithout the power to delegate duty and discretion the affairs of the [c]ity could not be carried on.' " [66] Homer City Code 21.68.040(c) does not vest arbitrary power or authority in the city clerk; it provides specific criteria, namely the requirements of HCC 21.68.030–.040, for the clerk to apply to appeals of land use determinations. We therefore agree that the Homer City Code authorized the clerk to reject Griswold's appeal and that the delegation of such authority was lawful.

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's decision upholding the city clerk's denial of Griswold's appeal for lack of standing.

---

**65.** Johnson did not consider Griswold's May 9, 2008 "Supplement to Notice of Appeal [Permit] 07–14 (KSMA)" showing the real property owned by Griswold in Homer because she "had already taken final action" in the matter. Failure to consider it was potentially error; HCC 21.68.040(c) provides that "[i]f a notice of appeal is rejected for reasons other than timeliness, a corrected notice of appeal that complies with this section will be accepted as timely if filed within seven days of the date of mailing the notice of rejection." Griswold's supplement was filed within seven days of Johnson's initial rejection. Any error was harmless, however, because the map Griswold provided was not evidence that he was a "person aggrieved" under the statute. *See supra* note 4.

**66.** *Municipality of Anchorage v. Anchorage Police Dep't Emps. Ass'n*, 839 P.2d 1080, 1084 (Alaska 1992) (quoting *City of Anchorage v. Richardson Vista Corp.*, 242 F.2d 276, 285 (9th Cir.1957)) (alteration in original).