CARNEY, Justice.
I. INTRODUCTION
Frank Griswold appealed a decision of the Homer Advisory Planning Commission to the Homer Board of Adjustment. The Board rejected his appeal for lack of standing. Griswold *250 appealed to the superior court, arguing that he had standing under the Homer City Code and alleging a number of due process violations. The superior court ruled that Griswold lacked standing as a matter of law and found any due process errors harmless. It also awarded the Board attorney's fees on the appeal, reasoning that Griswold did not qualify for protection from attorney's fees as a public interest litigant.
We reverse the superior court's decision on standing and vacate its award of attorney's fees.
II. FACTS AND PROCEEDINGS
In March 2014 Homer residents Terry and Jonnie Yager applied for a conditional use permit to build a covered porch ten feet into a twenty-foot setback along Pioneer Avenue in Homer's Central Business District. A public hearing before the Homer Advisory Planning Commission (the Commission) was set for the next month.
Frank Griswold is a Homer resident who owns several lots within the Business District, one of which is approximately 3,280 feet from the Yagers' property. Before the hearing he submitted two documents to the Commission, arguing that the setback exceptions required a variance rather than a conditional use permit and that provisions of the Homer City Code (HCC) allowing for setback exceptions by conditional use permits in the Business District conflicted with state law. After a public hearing the Commission approved the Yagers' conditional use permit, which it referred to as CUP 14-05.
In May Griswold filed a notice of appeal of the Commission's decision to the Homer Board of Adjustment (the Board). In his notice Griswold explained that he passed the Yagers' property "often several times a day" and that he appreciated the open space that the setback created along the street. He argued that the Yagers' permit would adversely affect the value of his Business District properties by increasing congestion in the area and that the permit would create a "pernicious precedent" for future setback exceptions in his neighborhood. Additionally Griswold said this would harm the use and enjoyment of his home.
The city clerk initially rejected Griswold's notice for lack of a legal description of the property that was the subject of the permit. The clerk later accepted Griswold's amended notice and sent out a letter to the parties explaining that she found Griswold's appeal "compliant with [HCC] Sections ... 21.93.070 and 21.93.080," provisions which respectively describe the time in which an appeal may be filed and what a notice of appeal must contain.
The letter further noted that "[o]nly persons ... who would be qualified to appeal under [HCC] 21.93.060 may participate as parties in an appeal from the Commission to the Board of Adjustment." HCC 21.93.060 defines standing to appeal from an action of the Commission to the Board, and allows appeals from "[a]ny person who actively and substantively participated in the proceedings before the Commission and is aggrieved by the action or determination."[1]
The clerk scheduled a hearing for August 13, 2014, but it was postponed at Griswold's request until September 15. In the meantime City Planner Rick Abboud filed a brief supporting the Commission's decision, and Griswold moved to strike the brief for lack of standing.
On the morning of September 15 Griswold emailed the Board's legal advisor, Holly Wells, asking whether there would be sufficient Board members if he won his motions to disqualify certain members. Wells responded that the hearing would have to be postponed if he successfully moved to disqualify members, but Griswold protested any postponement. The city clerk then issued a notice postponing the hearing until September 29, 2014, over Griswold's objections.
Mayor Mary Wythe and all Board members were present - one by telephone - for the hearing on September 29, as were the city clerk, Griswold, and the Yagers. Wells had been replaced by Joseph Levesque as the Board's legal advisor.
*251 After the Board heard and rejected Griswold's disqualification motions, Griswold asked if they were ready to address standing, referring to his motion to strike Abboud's brief for lack of standing. After being told that the Board had to finish preliminary issues first, Griswold asked when they would address his motion. The mayor responded, "I think that's under the jurisdictional section [of the hearing]." After the Board approved a motion to supplement the record, Griswold asserted that he had no more preliminary issues and again said that he would "like to address [Abboud's] standing." The mayor then determined that the Yagers had no preliminary issues of their own, and recessed the hearing briefly.
After the break the mayor opened the floor to questions of standing. She read from HCC 21.93.060's language regarding standing, and noted that it required an individual appellant be "aggrieved by the action or determination" from which he appealed. She recited the definition of "person aggrieved" from HCC 21.03.040:
a person who shows proof of the adverse effect an action or determination taken or made under the Homer Zoning Code has or could have on the use, enjoyment, or value of real property owned by that person. An interest that is no different from that of the general public is not sufficient to establish aggrievement.
She then asked Griswold if he had any property affected by the decision at issue and if his "use [or] enjoyment thereof affected by [the decision was] something different than ... that of anyone else in the community."
Griswold responded that his notice of appeal "was not rejected by the clerk" and had included a statement of standing that listed his properties. Mayor Wythe acknowledged Griswold's properties in the Business District, but asked him again to identify any proof of adverse impact to those properties or his enjoyment of those properties from the Commission's action. She further noted that his notice of appeal "[did] not identify ... proof that [his] properties ... [were] negatively impacted by this ... CUP." The mayor explained that she was looking for "very specific, tangible proof" of how the permit negatively impacted Griswold. Griswold responded, "[I]f there was no proof [the appeal] would have been rejected by the city clerk."
Griswold then explained that approval of the Yagers' permit would "set ... a continuing precedent for other properties in the neighborhood." "[I]f my entire neighborhood encroaches into the setbacks," he argued, "it's certainly going to affect my neighborhood, my enjoyment of walking around the Business District." Griswold explained that setbacks were meant to "provide adequate open spaces for light and air, prevent undue concentration of populations, lessen ... congestion on streets and highways, preserve and enhance the aesthetic environment of the community, and promote the health, safety and general welfare." The mayor asked if the permit would decrease the value of Griswold's property, and Griswold answered that he believed so but could not give an exact figure. But when Griswold asked in response if she could prove it would not devalue his property, the mayor said no. Griswold finally noted that no one had objected to his standing "through this whole event," and argued that standing objections were therefore waived.
The Board voted and found that Griswold did not have standing. The hearing adjourned, and the Board issued a written decision in November explaining its reasoning.
Griswold appealed the Board's decision to the superior court in December 2014. He argued that the Board erred in holding that he did not have standing; that the Board did not have the power to find that he lacked standing after the city clerk had accepted his notice of appeal; that the Board did not give him sufficient time or notice to argue the standing question; and that Wells, Levesque, and Mayor Wythe were impermissibly biased and had conspired to dismiss Griswold's appeal on standing grounds.
The superior court held that the Board had the authority to review the issue of Griswold's standing even though the clerk had accepted his notice of appeal. The court also held that Griswold had not shown that he was a "person aggrieved" under the HCC. It noted that Griswold had raised a number of *252 due process arguments related to alleged misconduct by Wells, Levesque, and Mayor Wythe, but found no harm to Griswold because of its determination that Griswold lacked standing to appear before the Board.
The court awarded the Board $ 4,733.10 in attorney's fees for Griswold's appeal under Alaska Appellate Rule 508(e)(4). Griswold had argued that he was a public interest litigant and was exempt from attorney's fees under AS 09.60.010(c)(2). The court disagreed:
The majority of Appellant's litigation does not appear to represent others' interests. Instead, he often bases standing on his own property values without proof, as in this case. He appears to hold a personal grudge against the City of Homer; and rather than benefitting the other citizens of Homer, his litigation is costing Homer taxpayers a lot of money to defend.[2 ]
Griswold now appeals, representing himself.
III. STANDARD OF REVIEW
"We resolve issues of standing ... using our independent judgment because they are questions of law involving matters of judicial policy."[3] "When the superior court acts as an intermediate appellate court, we independently review the merits of the underlying administrative decision. The specific form our independent review takes is de novo review: We adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[4]
"A trial court's award of attorney's fees is generally reviewed for abuse of discretion."[5] But a "trial court's application of law in awarding attorney's fees is reviewed de novo."[6]
IV. DISCUSSION
A. Griswold Is A "Person Aggrieved" Under HCC 21.03.040.
We generally interpret standing doctrine broadly, "in favor of 'increased accessibility to judicial forums.' "[7] But "[i]n the area of land use law, the legislature has chosen to limit standing by statute."[8] As explained in one of Griswold's earlier cases, Griswold v. City of Homer , these provisions effectively "eliminate[ ] taxpayer-citizen standing in land use cases."[9] But injury-interest standing was not abrogated; under AS 29.40.060(a) the legislature provides review for those "aggrieved" when "adversely affected" by the challenged city action.[10] Deciding whether a person is "aggrieved" in a land use case thus still resembles a traditional standing inquiry - an inquiry with a long-held policy "in favor of 'increased accessibility to judicial forums.' "[11] In light of this liberal policy, we *253 interpret AS 29.40.050 - .060 to "promot[e] citizen access to the courts," in harmony with our long-held, expansive views of standing.[12]
Because "[g]eneral Alaska standing law is not applicable," "we must look to the applicable statutes and ordinance[s] for guidance in determining whether [a party in a land use appeal] has standing."[13] There is no dispute that Griswold "actively and substantively"[14] participated in the Commission proceedings, so our analysis of standing begins with the HCC's definition of "person aggrieved." HCC 21.03.040 defines "person aggrieved" as
a person who shows proof of the adverse effect an action or determination taken or made under the Homer Zoning Code has or could have on the use, enjoyment, or value of real property owned by that person. An interest that is no different from that of the general public is not sufficient to establish aggrievement.[15 ]
We held previously that Homer's standing ordinance for land use appeals is "not more restrictive than our interpretation of AS 29.40.060(a)."[16] And the standing requirement in AS 29.40.050(a) - which requires municipal governments to provide appeals from administrative decisions - should be read to provide review to those "aggrieved" within the meaning of AS 29.40.060(a) - which provides for appeals to the superior court.[17]
So interpreted, HCC 21.03.040 requires that a property owner make only a minimal showing to qualify as a "person aggrieved." HCC 21.03.040 requires only that the property owner "show[ ] proof " of - not prove - the adverse effect that an action under the Homer Zoning Code "has or could have on the use, enjoyment, or value of real property owned by that person." (Emphases added.) The language "shows proof" suggests the HCC does not contain an evidentiary burden, such as a requirement to show standing by a preponderance of the evidence or beyond a reasonable doubt. Rather it requires only that the property owner produce some evidence supporting a claim of impact on real property. Likewise, the language "could have" implies that the causation chain for such evidence is minimal; i.e., that the property owner's evidence supports a potential, not actual, diminution in "use, enjoyment, or value." Finally, the language provides that the detrimental impact does not have to be economic - the impact can be on the "use" or "enjoyment" of the owner's property. The HCC thus requires only that a property owner produce some evidence supporting the owner's claim that the city's action could potentially adversely affect the owner's use or enjoyment of the owner's property.[18]
Griswold met these requirements.[19] Griswold argued that Homer's enabling ordinance *254 for setback reductions under conditional use permits - HCC 21.18.040(b)(4) - conflicts with state statutes and illegally circumvented another HCC provision.[20] Griswold supported this argument in his notice of appeal by stating that when the setbacks on neighboring properties are reduced, his use and enjoyment of his property are also reduced. Griswold claimed that he lives in the same zoning district as the property for which the conditional use permit was granted and that he owns six other properties in that district, one of which is within 3,300 feet of the permit property. No one disputed this factual support; when discussing standing before the Board the mayor explained, "Okay, so, Mr. Griswold, we do have record of your properties, and ... and I'm just asking for you to identify the proof of adverse impact to those properties." But the potential impact of building into the reduced setback is some evidence that Griswold, by virtue of his ownership in the zoning district, may suffer diminished enjoyment of his property.[21] And if Griswold's legal claim were successfully adjudicated on the merits, Griswold would be able to prevent setback reductions on all properties near or adjoining his in the zoning district, including the property in dispute. Griswold is therefore a "person aggrieved" under the HCC.[22]
The City argues that granting Griswold standing would provide standing to any property owner in the zoning district, rendering the City's standing requirement "futile." But because reduced setbacks could potentially harm every property owner in the zoning district, every property owner in that zoning district does have standing to challenge their legality.[23] As we explained in Kanuk ex rel. Kanuk v. State, Department of Natural Resources , "even federal law recognizes that denying injured persons standing on grounds that others are also injured - effectively preventing judicial redress for the most widespread injury solely because it is widespread - is perverse public policy."[24] An aggrieved property owner is no less aggrieved merely because the neighbors are aggrieved as well.[25] Although every property *255 owner in the district has standing, this does not mean that every property owner will prevail on a claim. The individual bringing the claim must still prevail on the merits by showing that a legal remedy against such harm is available.[26]
V. CONCLUSION
We REVERSE the superior court's judgment that Griswold lacks standing under the HCC and REMAND for reconsideration by the Homer Board of Adjustment.[27] We VACATE the superior court's award of attorney's fees against Griswold.[28]

HCC 21.93.060(c) (2014).

Griswold has litigated a number of matters of land-use policy and related issues in Homer. See Griswold v. City of Homer (Griswold 2011 ), 252 P.3d 1020 (Alaska 2011) ; Griswold v. City of Homer , 186 P.3d 558 (Alaska 2008) ; Griswold v. City of Homer , 55 P.3d 64 (Alaska 2002) ; Griswold v. City of Homer , 34 P.3d 1280 (Alaska 2001) ; Griswold v. City of Homer , 925 P.2d 1015 (Alaska 1996).

Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks , 48 P.3d 1165, 1167 (Alaska 2002). The dissent cites cases from other states to conclude that aggrievement is a question of fact. Dissent at 255. But in Alaska, standing is a question of law, not a question of fact. We decline to overrule our cases on this matter.

Heller v. State, Dep't of Revenue , 314 P.3d 69, 72-73 (Alaska 2013).

DeVilbiss v. Matanuska-Susitna Borough , 356 P.3d 290, 294 (Alaska 2015) (quoting Bachner Co. v. Weed , 315 P.3d 1184, 1189 (Alaska 2013) ).

Id. (quoting Bachner Co. , 315 P.3d at 1189 ).

Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res. , 335 P.3d 1088, 1092 (Alaska 2014) (quoting Trs. for Alaska v. State, Dep't of Nat. Res. , 736 P.2d 324, 327 (Alaska 1987) ).

Griswold 2011 , 252 P.3d 1020, 1029 (Alaska 2011) (alteration in original) (quoting Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough, 865 P.2d 741, 743 (Alaska 1993) ); see AS 29.40.050, AS 29.40.060.

Griswold 2011 , 252 P.3d at 1029.

Earth Movers , 865 P.2d at 743.

See Kanuk , 335 P.3d at 1092 (quoting Trs. for Alaska , 736 P.2d at 327 ); see also Coghill v. Boucher , 511 P.2d 1297, 1304 (Alaska 1973) (refusing to limit standing of registered voters to challenge vote-counting regulations due to "the public's vital interest in maintenance of the integrity of vote-tallying procedures").

Kanuk , 335 P.3d at 1093.

Earth Movers of Fairbanks, Inc. , 865 P.2d at 743.

HCC 21.93.060(c) (granting standing to appeal to the Board to "[a]ny person who actively and substantively participated in the proceedings before the Commission and would be aggrieved if the ... determination being appealed were to be reversed on appeal").

HCC 21.03.040 (2014).

Griswold 2011 , 252 P.3d 1020, 1028 (Alaska 2011). In that case we examined a prior version of the HCC, but the previous version was substantively identical to the current code. Id. at 1028, n.28 ; compare former HCC 21.68.020(c) (2011) (requiring a person to show proof of "adverse effect ... on the use, enjoyment, or value" of his or her real property to be considered "aggrieved") with HCC 21.03.040 (2014) (same).

Earth Movers , 865 P.2d at 743.

It is the Homer Code, which can be as liberal or restrictive as Homer decides to make it, that establishes whether there is standing. As is true when we interpret any statute, we do not create a new definition but rather interpret and apply the statute. Our interpretation of "aggrieved" thus relies upon the statute in which it appears: section 21.03.040 of the Homer Code.

Griswold also argues he has standing because the city clerk accepted his notice of appeal, constituting a factual finding of standing to which the Board must defer. But standing is a question of law, not fact, and the HCC expressly gives the Board authority to make findings on the question of a person's standing. See Law Project for Psychiatric Rights, Inc. v. State , 239 P.3d 1252, 1254-55 (Alaska 2010) ; HCC 21.93.510(b) (2014). The Board was not required to regard the clerk's acceptance of Griswold's notice of appeal as a decision on the issue of standing and it is not relevant to our determination that he has standing. Because the Board found Griswold lacked standing, it did not address his arguments on the legality of HCC 21.18.040(b)(4), so we need not address whether the Board has jurisdiction to determine the legality of its own code.

HCC 21.18.040(b)(4) provides in full: "If approved by a conditional use permit, the setback from a dedicated right-of-way, except from the Sterling Highway or Lake Street, may be reduced." HCC 21.18.040(b)(1) provides in turn: "Buildings shall be set back 20 feet from all dedicated rights-of-way, except as allowed by subsection (b)(4) of this section." Subsection (b)(4)'s invalidation would thus result in a mandatory 20-foot setback requirement under subsection (b)(1).

Griswold cites two law review articles as evidence that the setback reduction could also negatively affect the value of his property. See William K. Jaeger, The Effects of Land-use Regulations on Property Values , 36 Envtl. L. 105, 106, 115 (2006) ; Richard K. Green, Land Use Regulation and the Price of Housing in a Suburban Wisconsin County , 8 J. Housing Econ. 144, 156 (1999).

The superior court reasoned that Griswold "could have hired an appraiser ... to determine the [permit]'s effect, if any, on [Griswold]'s property values," an argument the City echoes on appeal. But HCC 21.03.040 does not require an appraisal showing a decrease in property value to demonstrate standing. By the code's own language the injury may be to a property owner's "use" or "enjoyment" of the property rather than its value; moreover, "show[ing] proof" of a diminution in value does not necessarily require a professional appraisal. Cf. Olivera v. Rude-Olivera , 411 P.3d 587, 592-93 (Alaska 2018) (upholding real property valuation based on property owner's testimony over argument that valuation was much higher than tax-assessed value).

This basis for injury-interest standing remains distinct from taxpayer-citizen standing because each property owner in the zoning district has an interest that goes beyond being a "suitable advocate" of issues "of significant public concern" as required for taxpayer-citizen standing. Kleven v. Yukon-Koyukuk School Dist. , 853 P.2d 518, 526 (Alaska 1993). All of the property owners in the zoning district have the potential injury to their property values and enjoyment; this is an adverse effect not felt by all taxpayer-citizens.

335 P.3d 1088,1094 (Alaska 2014) (citing Massachusetts v. EPA , 549 U.S. 497, 522, 127 S.Ct. 1438, 167 L.Ed.2d 248 (2007) ).

We recognize the dissent's concern that a zoning district in a large municipality may be so large that allowing every property owner in the district to challenge a zoning decision could "invite[ ] obstacles to reasonable development." Dissent at 255. But there is a distinction between a challenge to the legality of a zoning regulation that affects every property owner in a district and a challenge to a particular zoning decision that, although valid under the regulations, wrongly affects certain parcels within the district. The former can and should be available to each property owner; the latter can only succeed if the property owner can show the different and harmful impact upon the particular property.

See, e.g. , Spendlove v. Anchorage Mun. Zoning Bd. of Exam'rs & Appeals , 695 P.2d 1074, 1076 (Alaska 1985) (affirming zoning enforcement prohibiting mineral resource extraction despite existence of harm to individual property owner).

Because we are reversing on the basis of standing, we do not address Griswold's fair notice claims.

Because we are reversing and remanding, attorney's fees must also be vacated. In the event the superior court finds against Griswold and attorney's fees are again an issue, an analysis must be conducted under AS 09.60.010(c). The former public interest litigant doctrine on which the superior court relied was abrogated by the 2003 statute's creation of "constitutional claimants." Ch. 86, § 2, SLA 2003; see Alaska Conservation Found. v. Pebble Ltd. P'ship , 350 P.3d 273, 274 (Alaska 2015) ("Alaska Statute 09.60.010 was enacted to abrogate our previous common law public interest litigation attorney's fees framework and replace it with a narrower constitutional litigation framework.").