*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| WINCO ANCHORAGE INVESTORS I, L.P., | ) ) | Supreme Court No. S-18582 |

WINCO ANCHORAGE INVESTORS
I, L.P.,                                                )    Supreme Court No. S-18582
                                                       )
                    Petitioner,                        )    Superior Court No. 3AN-21-05629 CI
                                                       )
         v.                                            )    O P I N I O N
                                                       )
HUFFMAN BUILDING P, LLC and                            )    No. 7725 – October 4, 2024
MUNICIPALITY OF ANCHORAGE,                             )
ZONING BOARD OF EXAMINERS                              )
AND APPEALS,                                           )
                                                       )
                    Respondents.                       )
                                                       )

Petition for Review from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Herman G. Walker, Jr., Judge.

Appearances: Michael Jungreis and Colleen J. Moore, Reeves Amodio LLC, Anchorage, for Petitioner. Matthew T. Findley, Ashburn & Mason, P.C., Anchorage, for Respondent Huffman Building P, LLC. Quincy H. Arms, Assistant Municipal Attorney, and Anne R. Helzer, Municipal Attorney, Anchorage, for Respondent Municipality of Anchorage, Zoning Board of Examiners and Appeals.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

MAASSEN, Chief Justice.

## I. INTRODUCTION

A company that leased space to a government agency lost its bid to renew that lease to another landowner in a different zoning district. The new lessor asked the municipal planning department to approve the government agency's proposed use of its space; the planning department determined that the use was appropriate for the property's zoning designation. The former lessor challenged this determination by appeal to the municipal zoning board, which affirmed it.

The former lessor appealed the zoning board's decision to the superior court, which sua sponte questioned the former lessor's standing to appeal. After briefing, however, the court determined that the former lessor was a "party aggrieved" and therefore had standing; turning to the merits, the court decided that the zoning board's findings were insufficient and had to be reconsidered on remand.

The new lessor petitioned for review, which we granted. We conclude that the former lessor's interest is that of a business competitor, which is insufficient to show that it is a "person aggrieved" with standing to appeal a zoning decision to the superior court. We therefore reverse the superior court's decision and remand with instructions that the former lessor's appeal be dismissed.

## II. FACTS AND PROCEEDINGS

### A. Anchorage's Zoning Appeals Process

The Alaska Statutes establish a statewide standard for appeals from municipal land-use decisions, involving two levels of review.[1] For the first level, addressed in AS 29.40.050(a) and captioned "Appeals from administrative decisions," a municipality "shall provide for an appeal from an administrative decision of a municipal employee, board, or commission made in the enforcement, administration, or application of a land use regulation . . . to a court, hearing officer, board of

---

[1]     *Griswold v. City of Homer* (*Griswold 2011*), 252 P.3d 1020, 1027-28 (Alaska 2011) (citing AS 29.40.050-.060).

adjustment, or other body." The statute authorizes the municipality to "define proper parties" to such a proceeding.[2]

The second level of appeal — from the body designated under AS 29.40.050 — is described in AS 29.40.060, captioned "Judicial review." It states that municipalities "shall provide . . . for an appeal by a municipal officer or person aggrieved from a decision of a hearing officer, board of adjustment, or other body to the superior court."[3]

The Anchorage Municipal Code (the Code) follows these statutory requirements by establishing a two-level appeals process in Title 21. First, "appeals from decisions of the municipal staff" in land-use classification matters are heard by the Zoning Board of Examiners and Appeals (the Zoning Board).[4] As authorized by AS 29.40.050(b), the Code defines the "proper parties" to such an appeal: "Appeals to the zoning board of examiners and appeals may be brought by *any party of interest* for the application."[5] A "party of interest" is further defined, broadly, as "[t]he applicant, the owner of the subject property, the owner of property within the notification area for the subject application, and anyone that presented oral testimony at a public hearing or written testimony on the application."[6]

To meet the requirement of judicial review in AS 29.40.060, the Code succinctly provides: "In accordance with Appellate Rule 601 et seq., of the Alaska Rules of Court, a municipal officer, a taxpayer, or a person jointly or severally

---

[2]    AS 29.40.050(b).

[3]    AS 29.40.060(a).

[4]    Anchorage Municipal Code (AMC) 21.03.050(B)(1)(j) (2014).

[5]    AMC 21.03.050(B)(2) (emphasis added).

[6]    AMC 21.15.040.

aggrieved may appeal to the superior court."[7]  The Code does not define the term "person jointly or severally aggrieved."

## B.    Facts

In 2019 the federal General Services Administration (GSA) began the procurement process to secure a new long-term lease of warehouse space in Anchorage for the use of the U.S. Geological Survey (USGS).  The only two bidders were Winco Anchorage Investors I, LP (Winco), and the existing lessor, Huffman Building P, LLC (Huffman), whose 20-year lease term with the USGS was ending.  Huffman's building is located in South Anchorage; Winco's building is about five miles north in Anchorage's midtown.  In May 2020 the GSA awarded the lease to Winco.  Huffman filed a bid protest with the U.S. Government Accountability Office, which rejected it; Huffman challenged that determination in the U.S. Court of Federal Claims, which granted the government's motion to dismiss the case in February 2021.[8]

In the meantime, Winco requested a determination from the Municipality of Anchorage Planning Department that the USGS's intended use was consistent with the property's zoning designation.  Winco's building, located in the Campbell Creek Industrial Park, is in a B-3 zoning district.  According to Winco, the proposed use of the building fell into the "Research Laboratory" category, a permitted use in B-3 zoning districts.[9]  Winco explained that the USGS's use would "primarily include warehouse storage of core samples and geological minerals (i.e. 'rocks'), but [would] also include

---

[7]    AMC 21.03.050(D).

[8]    *Huffman Building P, LLC v. United States*, 152 Fed. Cl. 476, 482, 489-90 (2021).

[9]    *See* AMC 21.05.010(E) (2014) ("TABLE 21.05-1: *Table of Allowed Uses - Residential, Commercial, Industrial, and Other Districts*", listing "Research laboratory" as permitted use in B-3 zoning districts); AMC 21.05.060(A)(7) (defining "Research laboratory" as "[a] facility that is designed or equipped for basic or applied research or experimental study, testing, or analysis in the natural sciences or engineering.").

office/processing/laboratory areas for . . . field staff to research, analyze, and categorize core samples and minerals"; "some light fabrication of equipment assembly for field site use"; and "a single loading dock for truck deliveries, as well as a secured fenced-off area for Government vehicles only." Huffman opposed Winco's proposed use determination, contending that a "Research Laboratory" designation contradicted the USGS's past uses and descriptions of its space as "general warehouse use," which was not a permitted use in B-3 zoning districts.[10] The Planning Department determined "that the use of this site as described by the applicant has the characteristics of a Research Laboratory which falls under the Industrial Services section of Title 21" (emphasis omitted) and was therefore a permitted use in its zoning district.

### C. Proceedings

Huffman appealed the Planning Department's decision to the Zoning Board, which held a hearing in February 2021. The Zoning Board made some pertinent findings of fact — for example, that the nature of research laboratories varies among disciplines and that the use determinations of Planning Department staff, with its greater knowledge and experience, are entitled to the Board's deference — and denied Huffman's appeal. The resolution concluded: "Any party aggrieved by this decision may file an appeal pursuant to Anchorage Municipal Code section 21.03.050D."

Huffman appealed to the superior court. Winco moved to intervene, which the court allowed. Winco, Huffman, and the Municipality of Anchorage all briefed the merits of the Zoning Board's decision upholding the Planning Department's use determination.

Before deciding the merits, however, the superior court sua sponte raised "concerns that Huffman lacks standing to bring this appeal." The court said it was "inclined to dismiss the appeal for lack of standing based on Huffman not being

---

[10] *See* AMC 21.05.010(E) (Table 21.05-1 listing "Warehouse or wholesale establishment, general" as prohibited use in B-3 zoning districts).

properly 'aggrieved,' " and it asked that the parties brief the issue. In their briefing the Municipality and Winco both argued that Huffman lacked standing, relying primarily on the ground that a party is not "aggrieved" by a Zoning Board decision when the only injury is the "threat of business competition." Huffman countered that it did have standing, both because the Code and the Appellate Rules provide standing to all parties to Zoning Board proceedings and because it was a "person aggrieved" due to its specific and unique interest in ensuring consistent interpretation of the Code's use standards.

Following oral argument, the superior court ruled that Huffman did have standing. It reasoned (1) that under *Earth Movers of Fairbanks, Inc. v. Fairbanks North Star Borough*[11] a "party of interest" with the right to appeal a planning decision to the Zoning Board is necessarily the same as a "person aggrieved" with the right to appeal to the superior court; (2) that because Huffman was a party of interest before the Zoning Board, it was sufficiently aggrieved to appeal to the superior court; and (3) that Huffman also had standing because its interest "in consistent and predictable land use decision-making[] is a colorable issue of law and one that cannot be misplaced on appeal." Going on to address the merits, the court held that the Zoning Board had not sufficiently articulated the findings supporting its decision and therefore remanded the case to the Board for further consideration.

Winco moved for reconsideration, which the superior court denied. We granted Winco's petition for review on the issue of Huffman's standing.[12]

III. **STANDARD OF REVIEW**

"Where the superior court acts as an intermediate appellate court, [we] owe[] no deference to its decision" and independently review the underlying administrative determination on its merits.[13] We therefore review the superior court's

---

[11]    865 P.2d 741, 743 (Alaska 1993).

[12]    The Municipality of Anchorage joins in Winco's arguments here.

[13]    *Earth Movers*, 865 P.2d at 742 n.5.

decision de novo, adopting "the rule of law that is most persuasive in light of precedent, reason, and policy."[14]

## IV. DISCUSSION

### A. Huffman Is Not A "Person Aggrieved" With Standing To Appeal To The Superior Court.

Standing concerns "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right."[15] "[S]tanding in our state courts is not a constitutional doctrine; rather, it is a rule of judicial self-restraint based on the principle that courts should not resolve abstract questions or issue advisory opinions."[16] "The basic requirement for standing in Alaska is adversity,"[17] which "[e]nsures that parties will energetically pursue their opposing positions and present facts necessary for the fair resolution of the case."[18] We have generally recognized two types of standing: interest-injury and citizen-taxpayer.[19] The Alaska Legislature has the power to alter or add to

---

[14] *Griswold v. Homer Bd. of Adjustment* (*Griswold 2019*), 440 P.3d 248, 252 (Alaska 2019) (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 72-73 (Alaska 2013)).

[15] *Standing*, BLACK'S LAW DICTIONARY (11th ed. 2019).

[16] *Ruckle v. Anchorage Sch. Dist.*, 85 P.3d 1030, 1034 (Alaska 2004) (quoting *Trs. for Alaska v. State, Dep't of Nat. Res.*, 736 P.2d 324, 327 (Alaska 1987)).

[17] *Trs. for Alaska*, 736 P.2d at 327.

[18] *Myers v. Robertson*, 891 P.2d 199, 203 (Alaska 1995).

[19] *Ruckle*, 85 P.3d at 1034.

these judicially created conceptions of the doctrine,[20] and it has done so in the context of land use regulation, as shown in the statutes described above.[21]

### 1. Huffman's status as a "party of interest" with the right to appeal to the Zoning Board does not mean it is a "person aggrieved" with the right to appeal to the superior court.

As the starting point of its standing analysis, the superior court determined that the two-level appellate review required by state law means that a "party of interest" who has the right of appeal to the Zoning Board pursuant to AMC 21.03.050(B)(2) must necessarily qualify as a "person jointly or severally aggrieved" by an adverse decision of the Zoning Board, and therefore has the right of appeal to the superior court pursuant to AMC 21.03.050(D). The court believed that this conclusion was required by *Earth Movers*, where we equated the term "person adversely affected" found in the Borough ordinances in question with the statutory term "person aggrieved."[22] Winco contends that the superior court's conclusion was error, and we agree.

In *Earth Movers*, the local ordinance allowed a first-level appeal to the board of adjustment by "[a]ny person adversely affected by a [planning] decision or determination."[23] At the second level, the ordinance simply stated that "[e]ither the appellant or appellee may appeal the decision of the appeals officer or the board of

---

[20]　*See* Alaska Const. art. IV, § 1 ("The jurisdiction of courts shall be prescribed by law."); *Myers*, 891 P.2d at 203 ("In discussing the standing requirement, [we have] stated that an Alaska court has no subject matter jurisdiction unless the lawsuit before it presents an actual controversy involving a genuine relationship of adversity between the parties.").

[21]　*See Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough*, 865 P.2d 741, 743 (Alaska 1993); *Griswold 2011*, 252 P.3d 1020, 1029 (Alaska 2011); *Griswold 2019*, 440 P.3d 248, 252 (Alaska 2019).

[22]　*See* 865 P.2d at 743 (analyzing former Fairbanks North Star Borough Ordinance (FNSBO) 18.54.070(A)(3) (1992) and AS 29.40.060(a)).

[23]　*Id.* (emphasis omitted) (quoting former FNSBO 18.54.070(A)(3) (1992)).

adjustment to the superior court."[24]  Thus, a person appealing to the superior court necessarily had to be one "adversely affected" by the original planning decision.[25]  The question before us was whether a person "adversely affected" is also a "person aggrieved," fitting the statutory requirement of AS 29.40.060(a).[26]  We decided that the two terms meant essentially the same thing in the context of those local ordinances:  A person who was "adversely affected" was thus "aggrieved."[27]

The same cannot be said of the two terms at issue in the Anchorage Code, "party of interest"[28] and "person jointly or severally aggrieved."[29]  As expansively defined in the Code, a "party of interest" who may appeal to the Zoning Board includes "[t]he applicant, the owner of the subject property, the owner of property within the notification area for the subject application, and anyone that presented oral testimony at a public hearing or written testimony on the application."[30]  Because anyone may present oral or written testimony on an application regardless of interest, coherence, or even relevance to the specific matter at hand, the universe of persons who may appeal to the Zoning Board is virtually without boundary; this is distinguishable from the ordinance in *Earth Movers*, which only allowed persons "adversely affected" to appeal

---

[24]     *Id.* (quoting former FNSBO 18.54.070(F) (1992)).

[25]     *See id.*

[26]     *Id.* (quoting AS 29.40.060(a)).

[27]     *Id.  Compare Adversely*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2d ed. 1993) ("[I]n an adverse or hostile manner: with hostile effect" or "unfavorably, disadvantageously."), *and Adverse*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2d ed. 1993) ("[I]n opposition to one's interests."), *with Aggrieved*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, UNABRIDGED (2d ed. 1993) ("[H]aving a grievance" or "suffering from an infringement or denial of legal rights.").

[28]     AMC 21.03.050(B)(2).

[29]     AMC 21.03.050(D).

[30]     AMC 21.15.040 (2014).

at the first level.[31] The Anchorage Code's definition, in contrast, includes persons who are acting solely in their capacity as taxpayers and those whose injuries result only from business competition — categories of persons who we have decided fail to meet the "person aggrieved" standard of AS 29.40.060(a).[32]

Whether to allow such broad access to the *local* planning process is up to the municipality, by specific statutory grant: "The assembly may define proper parties" in this first level of review.[33] But a municipality's decision to afford appeal rights to every commenter does not mean that appeal rights to the *state* courts must be the same; in fact, the legislature has mandated the much narrower "person aggrieved" standard.[34] And it is not an "untenable result" that a person might have standing to appeal to the Zoning Board but cannot take the matter on to the superior court, as Huffman contends. It is common in the context of land use regulation that "a person who has standing to participate in administrative zoning proceedings will not necessarily have sufficient standing to appeal a zoning decision to the courts."[35] Each level of government controls access to its own adjudicative body.

Huffman argues that when a "party of interest" participates fully in the zoning process, "appeals an adverse zoning decision to the [the Zoning Board], *and loses*, it becomes a 'person aggrieved' entitled to appeal to the Superior Court" (emphasis in original), relying on Pennsylvania case law for support. But we do not read the Pennsylvania cases as supporting Huffman's position.

---

[31] *Earth Movers*, 865 P.2d at 743.

[32] *Griswold 2019*, 440 P.3d 248, 252 (Alaska 2019); *Earth Movers*, 865 P.2d at 745.

[33] AS 29.40.050(b).

[34] AS 29.40.060(a).

[35] 4 PATRICIA E. SALKIN, AMERICAN LAW OF ZONING § 42:7 (5th ed. 2024).

The two cases Huffman cites — *Thompson v. Zoning Hearing Board of Horsham Township*[36] and *Wright v. Town of McCandless Zoning Hearing Board*[37] — applied a waiver rule whereby a landowner who failed to object to another's standing before the zoning hearing board could not object to that party's standing on the subsequent judicial appeal; unchallenged party status before the board therefore meant party status in court.[38] But a Pennsylvania Supreme Court case applying the Philadelphia Code aptly described a process more closely resembling that in the Anchorage Code, distinguishing cases in which waiver was a possibility:

> [W]e agree . . . that although anyone may appear before the Board, to appeal a decision of the Board to the trial court it is necessary for the appellant to demonstrate that he or she is "an aggrieved person" as [defined by statute and case law]. A party is not necessarily aggrieved simply because he or she appeared or participated before the Board. Rather, to appeal from the Board to the trial court, an appellant must demonstrate in the trial court, if challenged, that he is

---

[36] 963 A.2d 622 (Pa. Commw. 2009).

[37] 267 A.3d 610 (Pa. Commw. 2021).

[38] *See Wright*, 267 A.3d at 618 (remanding to trial court for determination whether objector attained party status before board and therefore had standing to appeal to court); *Thompson*, 963 A.2d at 625 (concluding that because objector "appeared and participated as a party before the [zoning board] without objection by Landowner, he necessarily is aggrieved by the [zoning board's] adverse decision and has standing to appeal that decision to the trial court"). These cases reference the Pennsylvania Municipalities Planning Code (MPC), which limits appeals to the zoning hearing board — the first level of review — to a "landowner affected, any officer or agency of the municipality, or *any person aggrieved*." 53 Pa. Stat. and Cons. Stat. Ann. § 10913.3 (West 2023) (emphasis added). Subsequent appeals to the state court are also only permitted from "an aggrieved person." 53 Pa. Stat. and Cons. Stat. Ann. § 11002.1A(c). Because the standards for appeals to the zoning board and the state court are substantially the same — a "person aggrieved" — a person eligible to appeal to the zoning board is also eligible to appeal to the courts. This is distinct from Alaska law, under which standing to appeal to the zoning board and to the superior court can be — and in Anchorage are — distinct. AS 29.40.050-.060; AMC 21.03.050(B)(2), (D) (2014).

aggrieved pursuant to [these legal authorities], and may not avoid this obligation by arguing that the landowner failed to challenge standing before the Board. It would be futile, and contrary to the law, to require a landowner to challenge the standing of everyone who participates before the Board, when there is no requirement that participation before the Board requires standing at that stage.[39]

Here, too, mere appearance before the Zoning Board — an opportunity available to everyone — does not make a person "aggrieved" for purposes of further appeal.

Huffman contends that *Scott* is distinguishable because under the Philadelphia Code at issue in that case, "persons are aggrieved only if they have a 'substantial, direct and immediate interest in the claim sought to be litigated,' " whereas the Anchorage Code "does not contain this restrictive language." But it does not matter whether the Municipal Assembly intended a broader interpretation of "person aggrieved"; the legislature alone defines standing for appeals to the superior court, and we must interpret "person aggrieved" as used in AS 29.40.060(a).[40]

### 2. Huffman is not a "person aggrieved."

Huffman argues that it has standing to appeal the Zoning Board's decision as a "person aggrieved" either because it fits the definition of the term or because the more permissive standing provisions of the Code require a broader interpretation of the term in this case. We find neither argument persuasive.

---

**39** *Scott v. City of Philadelphia, Zoning Bd. of Adjustment*, 126 A.3d 938, 949 (Pa. 2015).

**40** *See Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough*, 865 P.2d 741, 743 (Alaska 1993) ("In the area of land use law, the legislature has chosen to limit standing by statute."); *Griswold 2011*, 252 P.3d 1020, 1029 (Alaska 2011) ("The Alaska Legislature, not the Homer City Council, eliminated taxpayer-citizen standing in land use cases by enacting AS 29.40.050–.060.").

"Person aggrieved" is a term often used in zoning law.[41] As commonly understood, the term is "broad enough to include persons other than the applicant whose interests in property are affected by administrative conduct."[42] " 'Persons aggrieved' are those who have been, or who can convincingly demonstrate that they will be, specially and adversely affected by the complained-of zoning decision and that the injury is within the zone of protected interests."[43] But the term has its limits: "A general interest in upholding the zoning plan, such as the interest which all members of the community have, is not sufficient for aggrievement."[44] "To be a person aggrieved by administrative conduct, it is necessary to have a more specific interest in the decision of which review is sought."[45]

We have equated the "person aggrieved" standard with the judicial doctrine of interest-injury standing.[46] "To establish interest-injury standing, a litigant must show: (1) 'a "sufficient personal stake" in the outcome of the controversy' and (2) 'an interest which is adversely affected by the complained-of conduct.' "[47] We interpret these requirements liberally, "to 'promot[e] citizen access to the courts,' in

---

[41] SALKIN, *supra* note 35, § 40:11.

[42] *Id.*

[43] Arden H. Rathkopf et al., *Standing To Sue in Zoning Cases*, *in* 4 RATHKOPF'S THE LAW OF ZONING AND PLANNING § 63:3 (4th ed. 2024).

[44] Sara C. Bronin & Dwight H. Merriam, *The Board of Appeals: Its Purposes, Powers, and Procedures*, *in* 3 RATHKOPF'S THE LAW OF ZONING AND PLANNING § 57:38 (4th ed. 2024); *see also* SALKIN, *supra* note 35, § 42:7 ("It is not enough that a person be a property owner in the municipality, or, absent a specific statute, a taxpayer with a general interest in efficient planning and zoning administration.").

[45] SALKIN, *supra* note 35, § 42:7.

[46] *Griswold 2019*, 440 P.3d 248, 252 (Alaska 2019).

[47] *PLC, LLC v. State, Dep't of Nat. Res.*, 484 P.3d 572, 578 (Alaska 2021) (quoting *Keller v. French*, 205 P.3d 299, 304 (Alaska 2009)).

harmony with our long-held, expansive views of standing."[48] But notwithstanding these "long-held, expansive views,"[49] we follow "the vast majority of jurisdictions [that] do not allow standing solely on the basis of potential business competition."[50]

We explained the rationale for this limitation over 30 years ago in *Earth Movers*:

> The prevention of competition is not a proper element of zoning. A person whose sole interest for objecting to the zoning board's action is to prevent competition with his business is not a person aggrieved. It is not the function of ordinances to provide economic protection for existing enterprises, and the fact that such businesses may suffer reduced incomes or that the property would depreciate in value will not confer standing on these owners. . . .[51]

Huffman argues, however, that it is a "person aggrieved" not solely because of its competitive interest in leasing to the GSA, but primarily because of its particularized interest in the rational, consistent, and predictable application of the Anchorage zoning ordinances, an interest that transcends that of the general public. But we disagree that this interest, even as Huffman defines it, supports "person aggrieved" standing.

In support of this argument, Huffman relies on *Griswold 2019*. Griswold, a property owner, challenged a conditional use permit allowing another property owner's intrusion into a setback.[52] The zoning board, and then the superior court on appeal, concluded that Griswold lacked standing to appeal the permit to the zoning

---

**48**    *Griswold 2019*, 440 P.3d at 253 (alteration in original) (quoting *Kanuk ex rel. Kanuk v. State, Dep't of Nat. Res.*, 335 P.3d 1088, 1093 (Alaska 2014)).

**49**    *Id.*

**50**    *Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough*, 865 P.2d 741, 744 (Alaska 1993).

**51**    *Id.* (quoting 83 AM. JUR. 2D *Zoning and Planning* § 1034 (1992)).

**52**    *Griswold 2019*, 440 P.3d at 250.

board, but we reversed, concluding that he had met the "minimal showing" that the Homer City Code required to support standing before that administrative body.[53]

Huffman argues that *Griswold 2019*'s "liberal interpretation" of "person aggrieved" supports its contention that it is a person aggrieved as well. But *Griswold 2019* is easily distinguished. Unlike this appeal, which considers standing to appeal to the state courts, *Griswold 2019* concerned standing to appeal at the first level, to the Homer zoning board.[54] "It is the Homer Code, which can be as liberal or restrictive as Homer decides to make it, that establishes whether there is standing" at this first level, and the Homer Code accordingly limited standing to appeal to the zoning board to "persons aggrieved."[55] We applied "aggrieved" as the Homer Code defined it, as requiring only "a minimal showing" of potential impact on the challenger's use or enjoyment of property.[56] Homer's definition of "person aggrieved" for the first level of appeal does not control the meaning of "person aggrieved" for the second level of appeal to the state courts, as defined by the legislature.

A better analogue to this case is *Earth Movers*. Earth Movers challenged a decision of the Fairbanks North Star Borough's planning department to grandfather in an existing gravel pit following zoning changes that disallowed such uses.[57] Earth Movers, "as the owner of gravel pit rights within the Borough, [claimed that] it would be adversely affected by the Department's mistaken allowance of [the] nonconforming use."[58] The board of adjustment upheld the department's decision and Earth Movers

---

[53]    *Id.* at 251, 253-54.

[54]    *Id.* at 251.

[55]    *Id.* at 253 & n.18.

[56]    *Id.* at 253.

[57]    *Earth Movers of Fairbanks, Inc. v. Fairbanks N. Star Borough*, 865 P.2d 741, 742 (Alaska 1993).

[58]    *Id.* at 742 n.3.

appealed to the superior court, which found that Earth Movers lacked standing and dismissed its appeal.[59]

We affirmed, adopting the rule that business competitors whose only alleged injury results from competition do not have standing.[60] Earth Movers argued that "[n]o one other than those with interests in lawfully operated gravel pits have greater interests in preserving the laws of gravel pits than those similarly situated to Earth Movers and Earth Movers itself"; but recharacterizing this more appropriately as an "interest in limiting competition in gravel sales," we held that it was "irrelevant because it [was] not an interest meant to be protected by the zoning ordinance."[61]

Huffman's interest here, similarly grounded in business competition, is arguably even less particularized than that asserted in *Earth Movers*. Huffman claims an interest not just in preserving the laws governing research laboratory use but also "in having the [industrial zoning] rules interpreted and applied in a fair, consistent, and predictable manner." But "[a] general interest in upholding the zoning plan, such as the interest which all members of the community have, is not sufficient for aggrievement."[62] And Huffman's motivating interest is clearly that of a competitor for lessees of commercial space; it does not attempt to argue that it would have entered the fray absent its loss of the long-term lease to Winco. Huffman is simply not "aggrieved" in the sense that the zoning laws are intended to address.

---

[59]    *Id.* at 742.

[60]    *Id.* at 745.

[61]    *Id.* (alteration in original).

[62]    Bronin & Merriam, *supra* note 44, § 57:38 & n.8 (collecting cases).

### B. Huffman's Alternative Arguments Also Fail.

#### 1. The legislature has eliminated taxpayer standing for land use appeals.

Huffman argues that if it is not found to be a "person aggrieved," it alternatively has standing as a municipal taxpayer because the Code provides that "a *taxpayer*, or a person jointly or severally aggrieved[,] may appeal to the superior court."[63] We could consider this argument waived, as Huffman did not raise it in the superior court until responding to Winco's motion for reconsideration.[64] But we discuss it briefly in order to clarify standing in the land-use context.

A municipality's decision to allow taxpayer standing in the state's courts cannot override a legislative decision to limit it.[65] Huffman argues that we have not rejected taxpayer standing in zoning cases and have never held "that a municipality was *prohibited* from extending taxpayer standing under either AS 29.40.[0]50 or AS 29.40.[0]60." (Emphasis in original.) It asserts that AS 29.40.060, as interpreted by *Griswold 2011*, eliminates "*the requirement that localities grant taxpayer standing under the common law* and instead left this question to the discretion of local legislative bodies." (Emphasis in original.)

But again we must disagree. In our reading, the statute's intent is clear: the parties that the municipality "shall" allow to appeal to the superior court are "a

---

[63] AMC 21.03.050(D) (2014) (emphasis added).

[64] *See Boyko v. Anchorage Sch. Dist.*, 268 P.3d 1097, 1102 (Alaska 2012) ("Normally we do not consider issues raised for the first time in a motion for reconsideration. But we have held that a motion for reconsideration 'permissibly raised new arguments and new facts' when the superior court 'denied [the] original motion "without prejudice" and expressly invited a second motion.' " (second alteration in original) (quoting *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1029 n.29 (Alaska 2009))).

[65] *See Earth Movers*, 865 P.2d at 743 ("In the area of land use law, the legislature has chosen to limit standing by statute.").

municipal officer or person aggrieved."[66]   Applying the interpretive principle of *expressio unius est exclusio alterius*,[67] we conclude that the legislature did not intend to allow judicial appeals for those not named.  We have held that a "person aggrieved" is someone who meets the interest-injury standard, which therefore "was not abrogated" by the statute.[68]  The legislature's failure to name other classes of potential appellants impliedly precludes them from having standing.  The exclusion necessarily applies to those whose only claimed interest is as taxpayers; citizen-taxpayer standing is a potentially broad category requiring only that the litigant "show that the issues raised are of public significance and that it is an appropriate litigant to seek adjudication of those issues."[69]  The legislature has the authority to "limit standing by statute" in the area of land use regulation,[70] and we conclude that it has done so.

### 2. Procedural rules do not give Huffman standing.

Anchorage Municipal Code 21.03.050(D) specifies that judicial review is authorized "[i]n accordance with Appellate Rule 601 et seq."  Alaska Appellate Rule 602(h) states that "[a]ll parties to the trial court or agency action . . . are parties to the appeal."  Huffman contends that the rule "supports the basic principle that any full-fledged party to a proceeding has appeal rights."  But Rule 602(h) is a procedural rule governing how parties are identified on appeal; other sections of the same rule concern

---

[66]    AS 29.40.060(a).

[67]    *See Knolmayer v. McCollum*, 520 P.3d 634, 647 n.45 (Alaska 2022) ("The principle of *expressio unius est exclusio alterius* establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions."  (internal quotation marks omitted) (quoting *Alaska State Comm'n for Hum. Rts. v. Anderson*, 426 P.3d 956, 964 n.34 (Alaska 2018))).

[68]    *Griswold 2019*, 440 P.3d 248, 252 (Alaska 2019).

[69]    *Law Project for Psychiatric Rts., Inc. v. State*, 239 P.3d 1252, 1255 (Alaska 2010).

[70]    *Griswold 2019*, 440 P.3d at 252 (quoting *Griswold 2011*, 252 P.3d 1020, 1029 (Alaska 2011)).

such procedural mechanics as the time to appeal, the content of the notice of appeal, the cost bond, and methods of service.[71] In other words, Rule 602(h) is merely meant to clarify certain administrative aspects of the appeals process. It cannot reasonably be read as either conferring or restricting standing.[72]

Relatedly, in support of its argument that Title 21 of the Code establishes broad requirements for standing, Huffman points to AMC 21.03.050(B)(6)(c), which states that "the parties have 30 days from . . . distribution of the [Zoning Board's final] decision to file an appeal to the superior court." Huffman reads this provision as stating that "*all* parties to a [Zoning Board] proceeding have standing to appeal to superior court" (emphasis in original), in line with its view that standing is granted to all parties by Appellate Rule 602(h). But like Appellate Rule 602(h), the time-limit ordinance is procedural and does not affect rights. And even if the Municipality intended to adopt more lenient standing rules for its administrative processes, it could not override a legislative limitation on standing in the courts.

## V. CONCLUSION

We REVERSE the decision of the superior court and REMAND with instructions that Huffman's appeal from the decision of the Zoning Board be dismissed for lack of standing.

---

[71] *See generally* Alaska R. App. P. 602.

[72] *See State v. Doe A*, 297 P.3d 885, 890 (Alaska 2013) (explaining that court deciding whether procedural rule may be considered substantive should "focus on whether the . . . rule is primarily concerned with public policy or an effective and efficient system for the administration of justice" and consider whether change to rule would make litigant's vindication of rights more difficult).